UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK CONNOLLY,

               Plaintiff,

    vs.

DRESDNER BANK AG, ALLIANZ SE and
EIF MANAGEMENT, LLC,

              Defendants.

08 Civ. **5018 (SHS)**

Removed from:     **ECF Case**

Supreme Court of the State of New York
County of New York

Index No. 08/600317

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendants Dresdner Bank AG and EIF

Management, LLC (the "Removing Defendants"), by and through their undersigned attorneys,

hereby remove the above-captioned civil action, and all claims and causes of action therein, from

the Supreme Court of the State of New York, County of New York, to the United States District

Court for the Southern District of New York, pursuant to 28 U.S.C. § 1332(a). The Removing

Defendants appear for the purpose of removal only and for no other purpose, reserve all defenses

and rights available to them, and state as follows:

         1.     Plaintiff filed the Summons and Verified Complaint and demand for Jury

Trial (the "Original Complaint") in the above-captioned civil action on or about February 1,

2008 in the Supreme Court of the State of New York, County of New York, under Index. No.

08/600317 (the "State Court Action"). Plaintiff did not effect service of the Original Complaint

on any of the defendants.

         2.     On or about May 27, 2008, Plaintiff served the Removing Defendants with

a Verified Amended Complaint and Demand for Jury Trial (the "Amended Complaint").

Pursuant to 28 U.S.C. § 1332(a) and Rule 81.1(b) of the Local Civil Rules of the United States

District Court for the Southern District of New York, a copy of the Original Complaint and the

Amended Complaint in the State Court Action are attached hereto as Exhibit A.

3.      This action is removable under 28 U.S.C. § 1332(a).  Under 28 U.S.C. §

1332(a), the "district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between....citizens of different States."

4.      On or about May 27, 2008, Dresdner Bank AG and EIF Management,

LLC were, for the first time, served with Plaintiff's Amended Complaint.  Defendant Allianz SE

has not been validly served with process in this action.

5.      Pursuant to 28 U.S.C. § 1446(b), the Notice of Removal is being filed

within 30 days after May 27, 2008, the date that Dresdner Bank AG and EIF Management, LLC

were served with the Amended Complaint and received actual notice of Plaintiff's initial

pleading.

6.      This Court possesses original jurisdiction to entertain this action pursuant

to 28 U.S.C. § 1332(a)(1).

The Removing Defendants are advised that Plaintiff, a natural person, is a resident

of the State of New York.  Upon information and believe, Plaintiff resides at 420 North Street,

Harrison, New York, 10528.

7.      Defendant Dresdner Bank AG ("Dresdner") is a foreign bank, located at

the address of Juergen-Ponto-Platz 1, Frankfurt am Main, Germany, 60301.  Dresdner is

headquartered in Frankfurt, Germany, and is therefore a citizen of a foreign state under 28 U.S.C.

§ 1332(a)(2). *See Inarco Int'l Bank N.V. v. Lazard Freres & Co.*, 1998 U.S. Dist. LEXIS 11574

(S.D.N.Y. 1998) (Aruban bank incorporated under Aruban law with an Aruban principal place of business considered a foreign citizen for diversity jurisdiction purposes).

       8.    Defendant EIF Management, LLC ("EIF") is a limited liability company ("LLC"). LLC's are deemed to be citizens of every state in which their members reside. *See, e.g., In re McCarthey Invs.*, LLC, Nos. 07 Civ. 5617, 07 Civ. 5618 and 07 Civ. 5619, 2007 U.S. Dist. LEXIS 81437 (S.D.N.Y. November 1, 2007) (holding LLC's and LLP's organized in Delaware took the citizenship of each its members or partners). Because all members of EIF reside outside of New York, removal is proper under 28 U.S.C. § 1332(a)(1). The members of EIF are:

    a.  Herbert Magid, who resides at 25 Planting Field Road, Medfield, Massachusetts, 02052;

    b.  John E. Buehler, Jr., who resides at 133 Walnut Avenue, Mill Valley, California, 94941;

    c.  Terence L. Darby, who resides at 559 Hearthstone Drive, Yardley, Pennsylvania, 19067;

    d.  Jonathan M. January, who resides at 41 Andrea Circle, Needham Heights, Massachusetts, 02494;

    e.  Mark D. Segel, who resides at 33 Balcom Road, Sudbury, Massachusetts, 01776;

    f.  D. Mitchell Coddington, who resides at 121 Grove Street, Wellesley, Massachusetts, 02482;

    g.  Andrew E. Schroeder, who resides at 135 Washington Avenue, Chatham, New Jersey, 07928.

Although not relevant to the jurisdictional analysis, EIF has its principal place of business at Three Charles River Place, 63 Kendrick Street, Needham, Massachusetts, 02494, and is organized under the laws of the State of Delaware.

       9.    Complete diversity exists between Plaintiff and the Removing Defendants.

10.    Plaintiff's Amended Complaint alleges actual, liquidated and compensatory damages, but does not specify the amount. However, the value of the carried interest at issue is in excess of $75,000, exclusive of interest and costs.

11.    This Court, therefore, possesses original jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332(a)(1), and the suit is removable to this Court in accordance with the procedures set forth in 28 U.S.C. §§ 1441 and 1446.

12.    The Removing Defendants appear specifically to effect removal of the State action, and nothing in this Notice shall be construed as a general appearance or as a waiver of any of the defenses set forth in Federal Rule of Civil Procedure 12, including but not limited to insufficiency of process or service of process, failure to join an indispensable party, failure to plead fraud with particularity, and failure to state a claim upon which relief can be granted due to the applicable statute of limitations, *res judicata*, unclean hands, laches and estoppel.

13.    The Removing Defendants further reserve the right to assert admissions and denials to the allegations of the Amended Complaint, as well as counter-claims and third-party claims, including but not limited to indemnification, following removal of the State action to this Court.

14.    The Removing Defendants will provide written notice of the filing of this Notice of Removal to Plaintiff as required by 28 U.S.C. § 1446(d).

15.    A copy of this Notice of Removal is concurrently being filed with the Clerk of the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1446(d).

16.    To date, no other process, pleading, or order has been served on Defendants in this action, with the exception of the Proposed Order submitted by Plaintiff to

Justice Cahn on May 28, 2008, extending the time to serve the Summons and Verified Amended

Complaint. A copy of this Proposed Order is included

WHEREFORE, Defendants Dresdner Bank AG and EIF Management, LLC

respectfully request removal of this action from the Supreme Court of the State of New York,

County of New York, to the United States District Court for the Southern District of New York.


Dated: New York, New York
May 30, 2008

MILBANK, TWEED, HADLEY & McCLOY
LLP

By: _____
Scott A. Edelman (SE-5247)
Renee H. Sekino (RS-0946)
Susan A. Hensler (SH-3635)
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

*Attorneys for Defendants Dresdner AG and
EIF Management, LLC*

# EXHIBIT A

**SUPREME COURT OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------X

PATRICK CONNOLLY,                                  :

                       Plaintiff,              :

              v.                                  :              Case No. 08600317

DRESDNER BANK AG, ALLIANZ SE and    :
EIF MANAGEMENT, LLC,                        :

                  Defendants.      :

------------------------------------------------------------X

## VERIFIED AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Patrick Connolly ("Mr. Connolly" or "Plaintiff"), by and through his undersigned counsel, hereby submits this Verified Amended Complaint and Demand for a Jury Trial against Defendants Dresdner Bank AG ("Dresdner"), Allianz SE ("Allianz") and EIF Management, LLC ("EIF"), (collectively, "Defendants"), alleging as follows:

## NATURE OF THE CLAIMS

1.      This is an action brought by Plaintiff Patrick Connolly against Defendants Dresdner, Allianz and EIF for declaratory, injunctive and equitable relief, as well as monetary damages, liquidated damages, punitive damages, and attorneys' fees and costs, to redress Defendants' breach of contract between Mr. Connolly and Dresdner, as well as Allianz, which purchased Dresdner, and EIF, Dresdner's successor in interest in connection with such contract, breach of the implied covenant of good faith and fair dealing, fraud, fraudulent inducement, civil conspiracy, violations of the New York Labor Laws, as well as violations of equitable quasi-contractual principles.

2.      Defendants' conduct was intentional, knowing, malicious, fraudulent, willful and wanton and/or showed a reckless disregard for Mr. Connolly, which warrants

an award of punitive damages, and which has caused and continues to cause him to suffer substantial economic and noneconomic damages, permanent harm to his professional and personal reputations, and severe mental anguish and emotional distress.

## PARTIES

3.      Plaintiff Patrick Connolly was employed by Dresdner for nearly 30 years, most recently as the Executive Vice President and Managing Director responsible for all lending and, indirectly, private equity investing in North America, until January 7, 2002, when he voluntarily undertook early retirement. At all relevant times, Mr. Connolly met the definition of "employee" under all relevant statutes.

4.      Defendant Dresdner Bank AG is a foreign bank conducting business within the United States and with a New York Branch located at 1301 Avenue of the Americas, New York, New York. At all relevant times, Defendant Dresdner Bank AG met the definition of an "employer" under all relevant statutes.

5.      Defendant Allianz SE is a foreign investment company conducting business within the United States and with a New York Branch located at 1345 Avenue of the Americas, New York, New York. Upon information and belief, Defendant Allianz SE purchased Defendant Dresdner Bank AG and assumed all of Dresdner's debts and obligations. At all relevant times, Defendant Allianz SE met the definition of an "employer" under all relevant statutes.

6.      Defendant EIF Management, LLC is a limited liability company with a New York branch located at One Penn Plaza, Suite 3306, 250 West 34th Street, New York, New York. Defendant EIF Management, LLC is the Managing Member of, and controls and makes all decisions for, the various entities that manage individual funds,

2

including United States Power Fund, L.P. At all relevant times, Defendant EIF Management, LLC met the definition of an "employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

### Mr. Connolly's Employment with Dresdner

7.    Mr. Connolly began his employment with Dresdner in or about September 1972, as an analyst.

8.    Throughout his employment, Mr. Connolly was a valued employee who performed exemplary work for Dresdner and played an integral role in the development and success of the bank.

9.    Due to his long record of success and excellent work performance, Mr. Connolly was eventually promoted to the position of Executive Vice President and Managing Director where he was responsible for all lending, trading activities and, indirectly, private equity investing, in North America.

10.    As an Executive Vice President and Managing Director, Mr. Connolly played a pivotal role in initiating, structuring, managing and closing several important private equity investments for Dresdner, including United States Power Fund, L.P. ("U.S. Power Fund" or "the fund") and Telecorp investments, two of Dresdner's most profitable private equity investments.

### Mr. Connolly's Work on Behalf of EIF and U.S. Power Fund

11.    In the late 1990s, Dresdner acquired EIF to enable the bank to invest in the U.S. Power industry. Specifically, the acquisition was designed as a way for Dresdner to create and invest in U.S. Power Fund, a private equity investment vehicle originally scheduled to raise $500 million.

12.     In recognition of Mr. Connolly's outstanding service and in anticipation of his significant contributions to Dresdner's investment in the power industry, Dresdner appointed Mr. Connolly to the Board of Directors of EIF upon its acquisition of that firm.

13.     As part of Mr. Connolly's dedicated service to Dresdner and EIF, he convinced Dresdner to allocate $50 million as seed money to contribute to the $500 million that EIF was scheduled to raise for U.S. Power Fund.

14.     In fact, Mr. Connolly spearheaded Dresdner's efforts to initiate the fund and took it upon himself to promote and successfully obtain approval from Dresdner's Board of Directors to allocate the $50 million seed money into the fund.

**Defendants Award Mr. Connolly an Interest in U.S. Power Fund**

15.     As a result of Mr. Connolly's persistent and pivotal efforts on behalf of EIF, and in recognition of his obtaining approval for the $50 million seed capital from Dresdner, Dresdner and the Compensation Committee of EIF voted to award Mr. Connolly a 0.6 percent carried interest in the fund, part of the five percent carried interest that Dresdner was entitled to in the fund. Such interest was fully vested when awarded in recognition of Mr. Connolly's efforts.

16.     The minutes of the Compensation Committee's meeting on January 6, 2001, unequivocally indicate that Mr. Connolly was awarded the 0.6 percent carried interest in the fund to be raised. The award of carried interest prior to the creation of a fund was the usual practice both at Dresdner and within the industry generally, and subject only to the creation of the fund.

17.     Mr. Connolly's interest in the fund was further approved by Christopher Wright, who had the power delegated to him to award the compensation to Mr. Connolly.

4

18.    The award was also memorialized in writing in the Dresdner Kleinwart Capital Carried Interest Arrangements documents, which was known within Dresdner as the "Bible" of ratified deals, as an "existing carried interest arrangement."

19.    Notably, the percentage carried interest in the Fund was in consideration of the substantial contributions made by Mr. Connolly to EIF and U.S. Power Fund at the time of the award. Specifically, the award of carried interest was to compensate Mr. Connolly for his establishment of the fund and his success in obtaining approval from the Dresdner Bank Board for the first $50 million in seed money. Accordingly, it was not conditioned on any future performance by Mr. Connolly and had fully vested when awarded.

20.    Mr. Connolly voluntarily undertook an early retirement from Dresdner in January 2002.

21.    However, despite this early retirement, Mr. Connolly continued to maintain an active role in the efforts to close U.S. Power Fund.

22.    Indeed, Mr. Connolly never resigned his position on EIF's Board of Directors and was never duly notified of his removal from the Board.

23.    As part of Mr. Connolly's continued role in the closing of U.S. Power Fund on or about February 22, 2002, after Mr. Connolly's early retirement from Dresdner, he signed, as an active member of the Management Committee of Project Finance Partners, L.P., the Unanimous Written Consent in lieu of a Meeting of the Management Committee.

24.    By December 2003, U.S. Power Fund was funded through subscriptions exceeding $250 million, including the $50 million in seed money obtained by Mr. Connolly from Dresdner.

**Dresdner and EIF Breach Their Agreement to Provide Mr. Connolly with the Carried Interest**

25.    Shortly after the launch of the fund, on or about January 6, 2004, Mr. Connolly requested, in writing, that Dresdner formally document the 0.6 percent carried interest in the fund that he had been awarded by Dresdner and EIF.

26.    Prior to Mr. Connolly's written request to memorialize the 0.6 percent carried interest in U.S. Power Fund, Mr. Connolly was never told that Dresdner and EIF did not intend to honor its obligations to pay him this earned compensation.

27.    In fact, Mr. Connolly was reassured by Defendants, right up until his early retirement in May 2002, that he would be awarded the carried interest and that he did not have to worry about that point.

28.    Indeed, Mr. Connolly's May 14, 2002, separation agreement with Dresdner carved out a specific exception from the general release for any claims arising out of the carried interest in U.S. Power Fund, demonstrating that Dresdner understood Mr. Connolly's entitlement to such an award.

29.    It came as a shock then, when Dresdner replied to Mr. Connolly's request in late January 2004, by stating that they were reneging on the compensation earned by Mr. Connolly and duly awarded three years earlier, alleging, for the first time, that the award was a "potential" allocation of carry held prior to the closing of the fund that somehow was not binding on the bank.

6

30.    Specifically, Dresdner claimed that Mr. Connolly was no longer entitled to the award for four reasons.

31.    First, Dresdner claimed that because it had sold its interest in EIF in December 2003, it was not required to compensate Mr. Connolly for the 0.6 percent carried interest in U.S. Power Fund.

32.    However, upon information and belief, Dresdner retained its five percent carried interest in U.S. Power Fund, even after purportedly selling its interest in EIF. This retained 5% interest included Mr. Connolly's 0.6% carried interest.

33.    Second, Dresdner claimed that Mr. Connolly was not entitled to his 0.6 percent carried interest because such awards were only distributed among EIF management.

34.    Dresdner also claimed, for the first time, that a vesting condition existed for carried interest awards in U.S. Power Fund.

35.    Contrary to these assertions, Mr. Connolly's 0.6 percent carried interest was never conditioned upon Mr. Connolly's continued service on the Board of EIF, nor was it subject to any after the fact vesting provisions.

36.    Finally, Dresdner claimed, again for the first time, that Mr. Connolly could not receive the 0.6 percent carried interest in U.S. Power Fund because the compensation was never cleared by Dresdner's Human Resources Department.

37.    However, Mr. Connolly was never told that his award of carried interest was subject to clearance by Dresdner's Human Resources Department and was never told that Human Resources did not approve his carried interest.

38.    Indeed, Mr. Connolly had received a carried interest award on numerous occasions at Dresdner without even being informed or being aware of any approval requirement by Dresdner's Human Resources Department.

39.    As a result, Dresdner's and EIF's failure to issue Mr. Connolly his earned compensation of the duly awarded 0.6 percent carried interest in U.S. Power Fund constituted a breach of the agreement to pay such compensation to Mr. Connolly.

40.    As a result of the conduct of Dresdner and EIF, Mr. Connolly has suffered, and continues to suffer, monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

41.    As a result of the conduct of Dresdner and EIF, Mr. Connolly has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, damage to his professional and personal reputations, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract)

42.    Mr. Connolly hereby repeats and realleges each and every allegation in paragraphs 1 through 41, inclusive, as if fully set forth herein.

43.    Mr. Connolly and Defendants were parties to an enforceable agreement, by which Defendants duly awarded Mr. Connolly a 0.6 percent carried interest in U.S. Power Fund as compensation for his role in initiating the fund and securing from Dresdner $50 million as seed money to start the fund.

44.     Defendants willfully and wantonly breached this agreement by failing to pay Mr. Connolly this carried interest pursuant to the agreement.

45.     As a direct and proximate result of Defendants' breach of contract, Mr. Connolly has suffered and continues to suffer substantial monetary and/or economic damages, including but not limited to, loss of past and future income.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

46.     Mr. Connolly hereby repeats and realleges each allegation contained in paragraphs 1 through 45, inclusive, as if fully set forth herein.

47.     Mr. Connolly and Defendants agreed to an enforceable agreement that contained an implied covenant of good faith and fair dealing.

48.     By Defendants' wrongful treatment in denying that Mr. Connolly was ever entitled to the carried interest, and refusing to award him the 0.6 percent carried interest, Defendants willfully breached their implied in law obligation to treat Mr. Connolly fairly and in good faith.

49.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Mr. Connolly has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Unjust Enrichment)

50.     Mr. Connolly repeats and realleges the allegations contained in paragraphs 1 through 49, inclusive, as if fully set forth herein.

51.     In recognition of the substantial work performed by Mr. Connolly with respect to U.S. Power Fund, including single-handedly convincing Dresdner to provide

EIF with $50 million dollars in seed money, Defendants promised Mr. Connolly a 0.6 percent carried interest in the U.S. Power Fund.

52.    In reliance on this 0.6 percent carried interest, Mr. Connolly continued to perform substantial services for U.S. Power Fund, even after he elected to take early retirement from Dresdner.

53.    Mr. Connolly at all times performed his duties in good faith.

54.    Defendants benefited substantially from Mr. Connolly's hard work and leadership throughout his employment with Defendants.

55.    Based on the specific promises made to Mr. Connolly regarding the carried interest awarded to him, he reasonably expected that he would be compensated for his services on behalf of U.S. Power Fund.

56.    Defendants refused to pay Mr. Connolly the 0.6 percent carried interest in U.S. Power Fund, resulting in a gross injustice that would be contrary to equity and good conscience if Defendants' promises and obligations are not enforced.

57.    As a direct result of Defendants' breach of its promises and obligations to Mr. Connolly, Defendants have been unjustly enriched and Mr. Connolly has suffered, and continues to suffer, substantial damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Quantum Meruit)

58.    Mr. Connolly repeats and realleges the allegations contained in paragraphs 1 through 57, inclusive, as if fully set forth herein.

59.    In recognition of the substantial work performed by Mr. Connolly with respect to U.S. Power Fund, including single-handedly convincing Dresdner to provide

EIF with $50 million dollars in seed money, Defendants promised Mr. Connolly a 0.6 percent carried interest in U.S. Power Fund.

60.    In reliance on this 0.6 percent carried interest, Mr. Connolly continued to perform substantial services for U.S. Power Fund, even after he elected to take early retirement from Dresdner.

61.    Mr. Connolly at all times performed his duties in good faith.

62.    Defendants benefited substantially from Mr. Connolly's hard work and leadership throughout his employment with Defendants.

63.    Based on the specific promises made to Mr. Connolly regarding the carried interest awarded to him, he reasonably expected that he would be compensated for his services on behalf of U.S. Power Fund.

64.    As a direct result of Mr. Connolly's reasonable and foreseeable reliance upon the promises made to him by Defendants regarding his carried interest in U.S. Power Fund, as well as Defendants' breach of those promises, Mr. Connolly has suffered, and continues to suffer, substantial damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Violation of New York Labor Law)

65.    Mr. Connolly repeats and realleges the allegations contained in paragraphs 1 through 64, inclusive, as if fully set forth herein.

66.    At all relevant times, Mr. Connolly was an "employee" within the meaning of the New York Labor Law. Similarly, at all relevant times, Defendants were and are "employers" within the meaning of the New York Labor Law.

67.     As previously alleged, Defendants agreed to compensate Mr. Connolly with a 0.6 percent carried interest in U.S. Power Fund in recognition of his substantial efforts in establishing the fund.

68.     Defendants failed to pay Mr. Connolly the 0.6 percent carried interest that was earned during his employment with Dresdner.

69.     All of these payments constitute "wages" within the meaning of New York Labor Law §§ 190 et seq.

70.     Defendants willfully, intentionally, fraudulently and deliberately refused to make the wage payments owed to Mr. Connolly, despite his demand for payment of such compensation, in violation of New York Labor Law §§ 190 et seq.

71.     As a result of the foregoing, Mr. Connolly has been denied wages and/or bonuses required under New York Labor Law §§ 190 et seq., and is entitled to an award of unpaid wages, liquidated damages as well as the attorneys' fees and costs incurred in this matter.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Fraud)

72.     Mr. Connolly hereby repeats and realleges the allegations contained in paragraphs 1 through 71, inclusive, as if fully set forth herein.

73.     In recognition of the substantial work performed by Mr. Connolly with respect to U.S. Power Fund, including single-handedly convincing Dresdner to provide the first $50 million dollars in seed money, Defendants promised Mr. Connolly a 0.6 percent carried interest in U.S. Power Fund.

74. In reliance on this 0.6 percent carried interest, Mr. Connolly continued to perform substantial services for U.S. Power Fund, even after he elected to take early retirement from Dresdner.

75. Defendants assured Mr. Connolly, up through the launch of U.S. Power Fund, that he would receive his carried interest in order to have him continue to perform work on behalf of U.S. Power Fund after his early retirement from Dresdner.

76. Defendants knew, or should have known, that these representations were false, and Defendants made and authorized, acquiesced in and/or ratified these false statements with scienter.

77. To the extent that any of these false statements constitutes a future promise or expectation, Defendants made and authorized, acquiesced in and/or ratified such statements with a present intent not to fulfill them.

78. These false representations as to Mr. Connolly's entitlement to a carried interest in U.S. Power Fund were made knowingly, or with a willful, wanton and reckless disregard for the truth.

79. Mr. Connolly reasonably relied upon these representations regarding his 0.6 carried interest in U.S. Power Fund when he agreed to sign the separation agreement and continued to perform work on behalf of the fund after his early retirement from Dresdner.

80. These representations were made by Christopher Wright, the members of the Compensation Committee, and/or others, who had authority to act, and were acting, on behalf of all Defendants. Mr. Connolly exercised due diligence by making sure the 0.6 percent carried interest was memorialized in writing. Defendants knew, or

reasonably should have known, that their representations to Mr. Connolly that he would receive the 0.6 percent carried interest in U.S. Power Fund were false and that Mr. Connolly would rely upon these false representations to sign a separation agreement and continue to perform substantial services for U.S. Power Fund, even after taking early retirement from Dresdner.

81.     Mr. Connolly's reasonable reliance upon Defendants' false representations has caused Mr. Connolly to suffer damages separate and distinct from the loss of the 0.6 percent carried interest in U.S. Power Fund.  Specifically, Mr. Connolly has suffered, and continues to suffer, independent damages as a direct result of Defendants' fraud, as follows:

A.  Plaintiff has suffered, and continues to suffer, harm to his professional and personal reputations; and

B.  Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Fraudulent Inducement)

82.     Mr. Connolly hereby repeats and realleges the allegations contained in paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.     In recognition of the substantial work performed by Mr. Connolly with respect to U.S. Power Fund, including single-handedly convincing Dresdner to provide

14

the first $50 million dollars in seed money, Defendants promised Mr. Connolly a 0.6 percent carried interest in U.S. Power Fund.

84.    As a result of Defendants' continued assurances that he would receive the 0.6 percent carried interest, Mr. Connolly agreed to enter into early retirement and sign a separation agreement with Defendants.

85.    Moreover, as a result of Defendants' continued assurances that he would receive the 0.6 percent carried interest, Mr. Connolly continued to perform substantial services for U.S. Power Fund, even after taking early retirement from Dresdner.

86.    However, contrary to these statements made to Mr. Connolly and the written memorial of such promise, Defendants unjustifiably refused to pay Mr. Connolly the carried interest to which he was entitled.

87.    Defendants knew, or should have known, that these representations were false, and Defendants made and authorized, acquiesced in and/or ratified these false statements with scienter.

88.    To the extent that any of these false statements constitutes a future promise or expectation, Defendants made and authorized, acquiesced in and/or ratified such statements with a present intent not to fulfill them.

89.    These false representations were made knowingly, or with a willful, wanton and reckless disregard for the truth, and were intended to deceive and defraud Mr. Connolly into signing the separation agreement and continuing to perform work on behalf of U.S. Power Fund.

90.    Mr. Connolly reasonably relied upon these representations regarding his 0.6 carried interest in U.S. Power Fund when he agreed to sign the separation agreement

and continued to perform work on behalf of the fund after his early retirement from Dresdner.

91.    These representations were made by Christopher Wright, the members of the Compensation Committee, and/or others, who had authority to act, and were acting, on behalf of all Defendants.  Mr. Connolly exercised due diligence by making sure the 0.6 percent carried interest was memorialized in writing.  Defendants knew, or reasonably should have known, that their representations to Mr. Connolly that he would receive the 0.6 percent carried interest in U.S. Power Fund were false and that Mr. Connolly would rely upon these false representations to sign a separation agreement and continue to perform substantial services for U.S. Power Fund, even after taking early retirement from Dresdner.

92.    Mr. Connolly's reasonable reliance upon Defendants' false representations has caused Mr. Connolly to suffer damages separate and distinct from the loss of the 0.6 percent carried interest in U.S. Power Fund.  Specifically, Mr. Connolly has suffered, and continues to suffer, independent damages as a direct result of Defendants' fraudulent inducement, as follows:

A.  Plaintiff has suffered, and continues to suffer, harm to his professional and personal reputations; and

B.  Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

16

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Civil Conspiracy)

93.    Mr. Connolly hereby repeats and realleges the allegations contained in paragraphs 1 through 92, inclusive, as if fully set forth herein.

94.    To the extent that Dresdner, Allianz and EIF are deemed to be separate and distinct entities, each of them is jointly and severally liable for the fraud, breach of contract, and other wrongful conduct of each of the others by virtue of civil conspiracy.

95.    At all relevant times, there was a corrupt agreement between and among all Defendants to induce Mr. Connolly to enter into early retirement and sign a separation agreement and continue to perform substantial services for U.S. Power Fund, even after taking early retirement from Dresdner, by promising him a 0.6 percent carried interest in U.S. Power Fund, despite Defendants' knowledge that such interest would not be awarded to Plaintiff.

96.    Defendants engaged in overt actions in furtherance of a civil conspiracy, including but not limited to numerous fraudulent activities associated with awarding Mr. Connolly a 0.6 percent carried interest in the fund to be raised, inducing him to agree to enter into early retirement and sign a separation agreement with Defendants, and refusing to pay Mr. Connolly his 0.6 percent carried interest in U.S. Power Fund.

97.    Defendants intentionally engaged in such actions in furtherance of their scheme of procuring Mr. Connolly's considerable experience in private equity investments to secure from Dresdner $50 million as seed money to start U.S. Power Fund and to continue to perform work for U.S. Power Fund after taking his early retirement from Dresdner.

17

98.     Defendants' actions in furtherance of a civil conspiracy have resulted in substantial and continuing harm to Mr. Connolly and has caused him to suffer substantial damages as alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that an award be issued in his favor containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the terms and conditions of the agreement with Plaintiff as well as the laws of the State of New York;

B.     An injunction and order requiring Defendants, or any successor company or jointly and severally liable entity or person, to pay the 0.6 percent carried interest in U.S. Power Fund, in full plus prejudgment interest;

C.     Mr. Connolly's costs and expenses, including his attorneys' fees, incurred leading up to and including this action and any other future actions to enforce the terms of the agreement and/or an award in his favor;

D.     An award of actual damages in an amount to be determined at hearing, plus prejudgment interest, for unpaid wages in violation of New York Labor Law §§ 190 et seq.;

E.     An award of liquidated damages in the amount of twenty-five percent (25%) of the total wages due pursuant to New York Labor Law §§ 190 et seq.;

F.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations resulting from Defendants' fraud, fraudulent inducement and other wrongful conduct.

18

G.    An award of damages in an amount to be determined at trial, plus

prejudgment interest, to compensate Plaintiff for severe mental anguish and emotional

distress, including but not limited to depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering

resulting from Defendants' fraud, fraudulent inducement and other wrongful conduct.

H.    An award of costs and expenses, as well as reasonable attorneys' fees, that

Mr. Connolly incurred in this action to the fullest extent permitted by law, including but

not limited to New York Labor Law §§ 190 et seq.;

I.    An award of damages for any and all other monetary and/or non-monetary

losses suffered by Mr. Connolly in an amount to be determined at hearing, plus

prejudgment interest;

J.    An award of punitive damages;

K.    Pre-judgment interest on all amounts due; and

L.    Such other and further relief as the court may deem just and proper.

New York, New York
May 27, 2008

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____

Douglas H. Wigdor
Andrew S. Goodstadt

350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

COUNSEL FOR PLAINTIFF

19

## VERIFICATION

STATE OF NEW YORK          )
                                              :
COUNTY OF NEW YORK  )

    ANDREW S. GOODSTADT, being duly sworn, states:

    I am the attorney for the above-named Plaintiff, Patrick Connolly, and have my office at 350 Fifth Avenue, Suite 5720, New York, New York 10118. I have read the annexed VERIFIED AMENDED COMPLAINT and know the contents thereof. The same is true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

    The reason why this Verification is made by me instead of by the Plaintiff, is that the Plaintiff is not located within the County of New York where I maintain my offices. The grounds of my belief and the sources of my knowledge as to all matters in the annexed VERIFIED AMENDED COMPLAINT are based upon statements made to me by Plaintiff and my general investigation of the facts of the case.

                                         ————————————————
                                           Andrew S. Goodstadt

Sworn to before me this

27 day of MAY          , 2008

————————————————
Notary Public

VIRGINIA GENTILE
Notary Public, State of New York
No. 01GE4960908
Qualified in Nassau County
Commission Expires January 2, 20 _10_

20

Index No. 600317/08

---

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

---

| | |
|---|---|
| PATRICK CONNOLLY,<br><br>            Plaintiff,<br><br>        v.<br><br>DRESDNER BANK AG, ALLIANZ SE and<br>EIF Management, LLC,<br><br>            Defendants. | :<br>:<br>:<br>:<br>:        Case No. 600317/08<br>:<br>:<br>:<br>:<br>:<br>: |

---

## VERIFIED AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

---

THOMPSON WIGDOR & GILLY LLP
Douglas H. Wigdor
Scott B. Gilly
Kenneth P. Thompson

Empire State Building
350 Fifth Avenue, Suite 5720
New York, NY   10118
(212) 239-9292

*Attorneys for Plaintiff Patrick Connolly*